IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GARY HARRIS                                    §
                                               §
            Petitioner,                        §
                                               §
VS.                                            §          NO. 3-06-CV-1309-B
                                               §
NATHANIEL QUARTERMAN, Director                 §          (Consolidated With:
Texas Department of Criminal Justice,          §          No. 3-06-CV-1449-B)
Correctional Institutions Division             §
                                               §
            Respondent.                        §

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Gary Harris, a Texas prisoner, has filed an application for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  For the reasons stated herein, the application should be denied.

I.

Petitioner was charged in two indictments with committing sexual offenses against his

teenage step-daughter, Valencia.  One indictment charged petitioner with indecency with a child.

The other indictment charged petitioner with aggravated sexual assault of a child.  After a jury was

empaneled and sworn, petitioner pled guilty to the indecency charge and not guilty to the aggravated

sexual assault charge.  The jury proceeded to convict petitioner of both offenses and sentenced him

to life imprisonment in each case.  His convictions and sentences were affirmed on direct appeal and

state collateral review.  *Harris v. State*, Nos. 05-02-01021-CR & 05-02-01022-CR, 2003 WL

1878946 (Tex. App.--Dallas, Apr. 16, 2003, pet. ref'd); *Ex parte Harris*, Nos. 63,792-01 & 63,792-

02 (Tex. Crim. App. Apr. 26, 2006).  Petitioner then filed this action in federal district court.[1]

---

[1]  Petitioner filed two applications for federal habeas relief--one challenging his guilty plea and resulting
conviction for indecency with a child (Case No. 3-06-CV-1309-B), and one challenging his conviction for aggravated

II.

In four grounds for relief, petitioner contends that: (1) he received ineffective assistance of counsel; (2) he never waived his right to a jury trial on the indecency charge; (3) the trial court improperly admitted extraneous offense evidence; and (4) he is actually innocent.

A.

Petitioner alleges that he was constructively denied the effective assistance of counsel at trial because his attorney: (1) failed to investigate the criminal history of witnesses who testified for the prosecution; (2) did not effectively cross-examine the victim and three other witnesses; (3) failed to challenge the state's case-in-chief; (4) did not object to the consolidation of the two indictments for trial; (5) coerced his guilty plea to the indecency charge by promising him probation; (6) failed to investigate the facts of the case; (7) did not present evidence favorable to the defense; (8) elicited harmful and prejudicial testimony from the victim and her mother; and (9) failed to disclose an actual conflict of interest.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonable professional conduct. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was

---

sexual assault of a child (Case No. 3-06-CV-1449-B). The two cases were subsequently consolidated under Case No. 3-06-CV-1309-B.

prejudiced by his attorney's substandard performance. *Strickland*, 104 S.Ct. at 2067. Prejudice

results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S.

364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result

was unreliable or proceeding fundamentally unfair due to deficient performance of counsel).

Where, as here, a state court has already rejected an ineffective assistance of counsel claim,

a federal court may grant habeas relief only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24,

146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it

relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches

a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v.*

*Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct.

at 1523. A decision constitutes an "unreasonable application" of clearly established federal law if

"the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523;

*see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by

state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

2.

The court initially observes that five of the nine ineffective assistance of counsel claims asserted by petitioner are either conclusory in nature or conclusively negated by the record. Although petitioner criticizes his attorney for failing to run criminal background checks on the state's witnesses, he fails to show that any of the four witnesses who testified for the prosecution had criminal histories or that evidence of prior arrests, charges, or convictions would have been admissible at trial. Nor has petitioner shown that counsel failed to effectively cross-examine any of these witnesses. In particular, petitioner does not specify what questions his attorney should have asked the victim, De'Channa Beaty, and Cindy Alexander, or demonstrate how a more effective cross-examination would have changed the outcome of the trial. With respect to the cross-examination of Dallas Police Detective Monty Petersen, petitioner faults defense counsel for not asking the detective if he promised probation, as opposed to leniency, in exchange for a written confession. However, the record shows that counsel asked Petersen if he ever mentioned anything to petitioner about probation, to which Petersen responded, "No." (SF-V at 18-19). Petitioner also fails to articulate any grounds upon which his attorney could have objected to the consolidation of the two indictments for trial, does not explain who counsel failed to challenge in the state's case-in-chief, and offers no evidence that his guilty plea to the indecency charge was induced by assurances that he would receive probation. These vague, conclusory, and self-serving allegations do not merit federal habeas relief. *See Beall v. Cockrell*, 174 F.Supp.2d 512, 523 (N.D. Tex. 2001) (citing cases) (conclusory allegations are insufficient to establish ineffective assistance of counsel).

3.

Petitioner further contends that his attorney failed to investigate the facts of the case and did not present evidence favorable to the defense. In blaming the outcome of his trial on defense

counsel, petitioner conveniently ignores two significant facts--he confessed to the police and wrote a letter graphically describing his many sexual encounters with Valencia. On November 20, 2001, after being advised of his *Miranda* rights, petitioner gave the following written statement to Detective Petersen:

> I, Gary Harris, am writing this confession because I'm so sorry that it ever happened and that I let it go on for as long as I did. Valencia and I were not having sex. She was selling me favors for money.
>
> How I mean by favors, Valencia would call me from time to time wanting money or needing soming [sic] to be done, like getting her hair done or her nails done, or just wanted some money to show off with, what she would do for the money or whatever she needed was this. (We would never have sex). She would always tell me that she would make it come out. And what she meant by that was she would jerk me off until I came and she would ask me to rub her p---y while she did so. This had been going on over three year period. Couple of times at home and two three time[s] at a motel on Loop 12 and Jim Miller. I always wanted to tell her Momma about but I just never found the heart to do so. I let Valencia get me going in this mess and then she got out of control, not even I could stop her or do anything with her. I'm sorry that all of this has happened and I do believe that she needs help for being so sex crazy but on the other hand I need to talk with someone because I no [sic] that it shouldn't have been going on. And I let it continue this long.

(SF-VII, St. Exh. 6). Less than two weeks after making this confession, petitioner wrote an eight-page letter to Kaylon Harris, his ex-wife and Valencia's mother, admitting to multiple sexual encounters with her daughter. During one such encounter, petitioner said that Valencia got out of the shower wearing only a towel. Valencia then:

> opened up her towel and showed me her body and said . . . don't even trip you no [sic] this body just to [sic] tight, you no [sic] you cut for it . . . and then she bent over and touch her toes and just had the p---y all open and aimed at me. I walked over and put my tongue in it and she said don't put your tongue in it just lick it, anyway we both went to the room where I sucked her p---y and she jerked me off[.]

(*Id.*, St. Exh. 8 at 3). Another time:

> [Valencia] tells me to lick her c--t and squeeze her brest [sic] at the
> same time. Or she would lie on her stomach spread her legs and put
> my d--k between her legs so that she I go up and down it would rub
> her c--t if she held her leg together real tight and she got off like that
> and then she would play with me until I [ejaculated], making me
> [ejaculate] was something big with her[.]

(*Id.*, St. Exh. 8 at 4).

At trial, Valencia testified that she was born on January 26, 1985. (*See* SF-IV at 14). If petitioner had been involved in a three-year sexual relationship with Valencia when he confessed to the police on November 20, 2001, that means Valencia was less than 14 years old when the relationship began. Indeed, Valencia testified that she was only 11 years old when petitioner "started messing" with her in the summer of 1996. (*Id.* at 23). The first incident occurred when petitioner summoned Valencia to his bedroom. According to Valencia:

> I went upstairs to see what he wanted and, when I went in there, he
> was laying in the bed and he told me to close the door and lock it, and
> I didn't know why he called me in there. So, after I was in there, he
> was already laying in the bed with no clothes on.
>
> And so, he said that he was gonna show me something and when--I
> didn't know what he was gonna show me. So, I waited in there to see
> what he wanted. So, he told me to take my shirt off, and so I did.
>
> So, after that, he told me to take my shorts off and lay in the bed with
> me. I did. So, after that, he had me to take my panties off and told
> me to lay on my stomach. So, he climbed on me from the back and
> he started moving, and what he told me, he told me that all daddies
> do this to their little girls, and I believed him.

(*Id.* at 25). Upon further questioning by the prosecutor, Valencia clarified that petitioner inserted his penis into her vagina during this sexual encounter. (*Id.* at 28-29). Valencia also described other sexual liaisons with petitioner when she was between the ages of 11 and 16. (*See id.* at 29-36). One time, when Valencia was 16 years old, petitioner took her out of school and brought her to a local motel where they engaged in mutual masturbation. (*Id.* at 40-54). Valencia continued to have

sexual relations with petitioner until she reported the incidents to her mother sometime around Thanksgiving in 2001. (*Id.* at 60-66).

In an affidavit submitted to the state habeas court, defense counsel explained that he thoroughly investigated the aggravated sexual assault charge, which was based on events that allegedly occurred on or about September 1, 1996, and the indecency charge, which was based on events that allegedly occurred on or about November 17, 2001. *See Ex parte Harris*, No. 63,792-01, Tr. at 80-81. His investigation included interviewing witnesses and reviewing relevant documents, including petitioner's confession and the incriminating letter petitioner sent to his ex-wife. *Id.* Although counsel presented all available exculpatory and mitigating evidence and challenged the state's case-in-chief to the best of his ability, his efforts were unsuccessful. *Id.* at 81. As counsel observed, the defense of this case was particularly challenging "in light of the fact that Mr. Harris gave a written confession and wrote letters to the complaining witnesses' mother corroborating the complaining witness' allegations." *Id.* The state court ultimately rejected petitioner's ineffective assistance of counsel claims, finding that petitioner "was represented by an attorney who exercised all of the skill and expertise which one could reasonably expect of an attorney[.]" *Id.* at 78. This finding is conclusive in a subsequent federal habeas proceeding unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The only evidence offered by petitioner to rebut the state court's finding is Valencia's affidavit recanting her trial testimony.[2] Valencia now claims that she never had sexual relations with petitioner and that she fabricated all of her accusations because petitioner would not let her go out with her boyfriend. *Ex parte Harris*, No. 63,792-01, Tr. at 36-37. Even if Valencia perjured herself

---

[2] Petitioner also obtained affidavits from De'Channa Beaty, Delores Harris, and James Kopja. *See Ex parte Harris*, No. 63,792-01, Tr. at 43-45, 47-48, 50-52. The Beaty and Harris affidavits are unsigned and the Kopja affidavit is based entirely on hearsay. Consequently, none of this evidence is admissible on federal habeas review.

at trial, there is no reason to believe that further investigation by defense counsel would have uncovered that fact. Valencia executed the affidavit recanting her testimony on August 13, 2004-- more than *two years* after petitioner's trial. Prior to that date, there was nothing to suggest that her trial testimony was false. Indeed, petitioner himself admitted to having an improper sexual relationship with Valencia for more than three years. On these facts, the state court decision rejecting petitioner's claims that his attorney failed to investigate the case and did not present favorable evidence was neither contrary to clearly established federal law nor unreasonable. *See Snow v. Sirmons*, 474 F.3d 693, 724 (10th Cir. 2007) (failure to seek continuance to investigate the veracity of witness's testimony did not constitute ineffective assistance of counsel where witness did not recant testimony until after trial).

4.

Petitioner also criticizes his attorney for eliciting harmful and prejudicial testimony from Valencia and her mother. On cross-examination, defense counsel asked Valencia to recall her prior testimony that she was 11 years old at the time of her first sexual encounter with petitioner in 1996. (*See* SF-IV at 74). Counsel then got Valencia to admit that she waited more than five years before reporting the incident to her mother and the police. (*See id.* at 74-78). During his cross-examination of Kaylon Harris, defense counsel asked:

> Q:  Ms. Harris, the--the first time that you met with [Valencia]
> and discussed this matter, did she tell you about an incident that
> happened five years prior to this--prior to that date?
>
> A:  She told me that it happened a while back.
>
> Q:  Okay. Did she specify what "a while" meant to her?
>
> A:  When she was eleven.
>
> Q:  Pardon me?

A:     When she was eleven, that's when it started.

Q:     Okay. And that would be pretty important information, wouldn't you agree, to--

A:     Yes.

Q:     --to tell the police officer.

A:     Yes. From my information, that's what she told the detective.

Q:     Okay. But, I mean, when you filled out an affidavit--you testified to the jury that you filled out an affidavit with the detective just a few days later, correct?

A:     Uh-huh. Yes.

Q:     And wouldn't that--wouldn't you think that would be some important information that you'd include in your affidavit when telling the police officer?

A:     Yes.

\* \* \* \*

Q:     Okay. And there's nothing in there about an incident happening when she was eleven--is there?

A:     No, that I didn't write.

(*Id.* at 103-04).

Because the state was required to prove that Valencia was under 14 years of age to obtain a conviction for aggravated sexual assault,[3] it was essential for defense counsel to attack Valencia's testimony regarding her age. Counsel emphasized the five-year delay between Valencia's first sexual encounter with petitioner and her outcry in an attempt to impeach her credibility and convince the jury that the incident occurred when she was older than 14. In light of petitioner's

---

[3]    Under Texas law, a person commits the offense of aggravated sexual assault if, *inter alia*, the person "causes the penetration of the . . . sexual organ of a child by any means" and "the victim is younger than 14 years of age." *See* Tex. Penal Code Ann. § 22.021(a)(2)(B) (Vernon Supp. 2006).

written confession admitting to a three-year sexual relationship with Valencia, counsel's decision to focus on her delay in reporting the first incident was sound trial strategy. *See Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir.), *cert. denied*, 126 S.Ct. 550 (2005) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

5.

Petitioner further contends that defense counsel had a conflict of interest because of his prior employment as an Assistant District Attorney, his relationship with the prosecutor, and his "outspoken beliefs and attitude towards sex offenders." (*See* Pet. Mem. Br. at 16). In order to obtain habeas relief on this ground, petitioner must show that his attorney was burdened by an actual conflict of interest and that the conflict had some adverse effect on his defense strategy. *See Hernandez v. Johnson*, 108 F.3d 554, 559 (5th Cir.), *cert. denied*, 118 S.Ct. 447 (1997) (citing cases).[4] Petitioner has failed to meet this heavy burden. That defense counsel was a former Assistant District Attorney, where he worked with the prosecutor who tried this case, does not give rise to an actual conflict of interest. *See Harms v. Quarterman*, No. C-06-00440, 2007 WL 1256616 at \*13 (S.D. Tex. Apr. 30, 2007) (defense counsel does not necessarily operate under a conflict of interest because of prior employment as a prosecutor). Even if counsel told petitioner that "he detested sex offenders and felt that I should go to prison for a long time for these charges," *see Ex*

___

[4] Petitioner mistakenly believes that he is not required to prove prejudice in order to prevail on his conflict of interest claim. (*See* Pet. Mem. Br. at 16). Under Fifth Circuit precedent, the *Strickland* standard governs ineffective assistance of counsel claims based on conflicts of interest that do not result from the representation of multiple defendants. *See Hernandez*, 108 F.3d at 559.

*parte Harris*, No. 63,792-01, Tr. at 39, petitioner has failed to identify "some plausible defense strategy or tactic [that] might have been pursued but was not, because of the conflict of interest." *Hernandez*, 108 F.3d at 560, *quoting Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996).

6.

Petitioner generally alleges that his attorney "allowed the accumulation of multiple points of error which ultimately and constructively denied [him] a fair trial and an effective opportunity to show his actual innocence." (Pet. Mem. Br. at 14). This argument implicates the cumulative error doctrine, which provides that "an aggregation of non-reversible errors (i.e. plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 887 (1999). Here, petitioner has failed to establish that the performance of his attorney was deficient in any way or that he was prejudiced thereby. As a result, relief is not available under the cumulative error doctrine. *See Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.), *cert. denied*, 121 S.Ct. 122 (2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

B.

In two grounds for relief, petitioner complains that he never executed a written waiver of his right to a jury trial on the indecency charge and that the trial court improperly admitted extraneous offense evidence. Although both claims are couched in due process terms, petitioner cites only Texas authority to support his entitlement to federal habeas relief. The misapplication of state law or procedural rules is not cognizable in a federal habeas proceeding unless the petitioner can establish that the error deprived him of a fair trial. *See Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir.), *cert. denied*, 107 S.Ct. 3278 (1987); *Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir. 1985),

*cert. dism'd*, 106 S.Ct. 1798 (1986). Here, petitioner does not allege, much less prove, that the failure to execute a written jury trial waiver and the admission of extraneous offense evidence implicate due process or any other federal constitutional right.

Moreover, petitioner never waived his right to a jury trial on the indecency charge. Instead, he pled guilty in the presence of the jury before the trial commenced. The jury proceeded to hear the evidence and, as instructed by the trial court, found petitioner guilty of the offense. Because petitioner had a jury trial, a written waiver was not required.[5] With respect to his extraneous evidence claim, there was nothing improper about allowing Valencia to testify that petitioner had a gun in his bedroom during one of their sexual encounters. (*See* SF-IV at 65). As the prosecutor argued to the court outside the presence of the jury, this evidence was "contextual." *See Busby v. Dretke*, No. 3-04-CV-0981-P, 2005 WL 1406049 at *3 (N.D. Tex. Jun. 14, 2005), *rec. adopted*, 2005 WL 1586115 (N.D. Tex. Jul. 5, 2005) (evidence regarding handgun found in vehicle several days after murder, though a legally separate offense, was so "blended or closely interwoven" with the murder that proof of all facts was proper).

## C.

Finally, petitioner contends that he is actually innocent. A claim of actual innocence, standing alone, is insufficient to merit federal habeas relief. *See Dowthitt v. Johnson*, 230 F.3d 733,

---

[5] Tex. Code Crim. Proc. Ann. art. 1.13(a) provides:

> The defendant in a criminal prosecution for any offense other than a capital felony case in which the State notifies the court and the defendant that it will seek the death penalty shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the State shall be in writing, signed by him, and filed in the papers of the cause before the defendant enters his plea.

Tex. Code Crim. Proc. Ann. art. 1.13(a) (Vernon 2005).

741 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1250 (2001), *quoting Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  There also must be evidence of an independent constitutional violation in the state criminal proceeding.  *Id*. at 741.  Because petitioner has failed to establish an underlying constitutional violation, he is not entitled to habeas relief on his actual innocence claim.

### RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party may file written objections to the recommendation within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   October 30, 2007.


JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE